T.C. Summary Opinion 2007-57


UNITED STATES TAX COURT


LESLEY J. SMITH, a.k.a. LESLEY J. SCOTT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22991-04S.           Filed April 16, 2007.


<u>Deborah R. McIntosh</u>,[1] for petitioner.

<u>Inga C. Plucinski</u>, for respondent.


DAWSON, <u>Judge</u>:  This case was heard pursuant to section 7463
of the Internal Revenue Code in effect when the petition was

---

[1]Prof. McIntosh is the supervising attorney of the
University of Idaho College of Law Legal Aid Clinic, which
provides assistance to low-income taxpayers in controversies with
the Internal Revenue Service.

filed.[2]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner seeks relief from joint and several liability for Federal income taxes for the years 1990 through 1995 with respect to joint returns she filed with her former husband, David Reeves Scott (Mr. Scott).  Respondent determined that petitioner is not entitled to relief under section 6015(b) or (c) but is entitled to relief for one-half ($13,476) of the total liabilities under section 6015(f).  Petitioner filed a petition seeking review of respondent's determination.  The only issue for decision is whether petitioner is entitled to full relief under section 6015(f) for all of the tax liabilities.[3]

---

[2]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[3]The Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408, 120 Stat. 3061, amended sec. 6015(e)(1) to give the Tax Court jurisdiction to determine the appropriate relief available to a taxpayer under sec. 6015, including relief under sec. 6015(f) in cases where no deficiency has been determined for the tax year.  The amendment applies with respect to liability for taxes arising or remaining unpaid on or after Dec. 20, 2006, the date of enactment.  Id. sec. 408(c), 120 Stat. 3062.  The liabilities at issue in this case remain unpaid, and we have jurisdiction to determine the relief available to petitioner under sec. 6015(f) for all years in issue.

## Background

Some of the facts were stipulated. Those facts, with the attached exhibits, are so found and are made a part hereof.

Petitioner is married to Grant Smith, and she resided in Portage, Utah, when she filed the petition in this case.

Petitioner was married to Mr. Scott from September 5, 1975, until they were divorced on January 8, 2001. She and Mr. Scott (collectively the Scotts) had three children, who are now adults.

Mr. Scott died on December 24, 2003. Mr. Scott was an accountant who worked for an accounting firm while he and petitioner were married. He also operated a part-time bookkeeping service business.

Petitioner has a high school education. She worked part time while she was married to Mr. Scott. During the years at issue, she was employed part time as a substitute secretary/clerk for a school district and as a shipper for a distribution center. In 1991, she also occasionally provided janitorial services.

The Scotts also operated a business called Karnival Klassics from their home. Petitioner supplied games and puzzles to organizations that were putting on carnivals, and she and her children performed as clowns during the carnivals. Mr. Scott kept the records for the business. An organization paid half the fee before the event so that petitioner could purchase supplies. After the event, the organization sent a check for the balance of

the fee. Petitioner gave Mr. Scott the receipts and checks. For most years, Karnival Klassics broke even or made a small profit. Mr. Scott once told petitioner that Karnival Klassics had a loss for the year and that they could deduct a loss for only 3 years.

Mr. Scott handled the family finances and dominated the family. He told petitioner the number of exemptions to claim for her withholding. The Scotts had a joint checking account they used to pay household expenses. Mr. Scott controlled and balanced the account. The Scotts did not live well, and money was always tight. They had modest furnishings and vehicles, and they never owned a home.

Mr. Scott prepared their joint Federal income tax returns for 1975 through 2000, all the tax years of their marriage. Each year, on or before the April 15 due date, Mr. Scott would place the Federal and State returns before petitioner and instruct her exactly where to sign each return. Petitioner did not fill in the date next to her signature; Mr. Scott did.[4] Because Mr. Scott was an accountant and provided bookkeeping records and services and prepared tax returns for others, petitioner trusted him to properly complete their tax returns, and she did not review them. She did not look to see whether they owed tax or were due a refund. She did not know that Mr. Scott filed some of

---

[4]The dates on the Federal tax returns are in Mr. Scott's handwriting.

the returns after their due dates. He filed the 1990 return on November 7, 1992, the 1991 return on August 26, 1996, the 1992 return on October 29, 1994, and the 1993 return on January 26, 1998.

On the 1990 return, the Scotts reported Mr. Scott's wages of $29,223, petitioner's wages of $8,382, a $10,867 net operating loss from Karnival Klassics, and a $141 overpayment of tax. On February 23, 1994, respondent sent to the Scotts a notice of deficiency for 1990 determining a $4,193 deficiency in income tax, an addition to tax under section 6651, and a penalty under section 6662(a). The Scotts petitioned this Court for redetermination of the deficiency, the addition to tax, and the penalty. On March 14, 1995, the Court entered a stipulated decision that the Scotts were liable for a $3,176 deficiency in income tax attributable to the disallowance of the $16,360 of expenses claimed for the Karnival Klassics activity, an addition to tax of $795 under section 6651(a), and a penalty of $635 under section 6662(a).

On the 1991 return, the Scotts reported Mr. Scott's wages of $26,232, petitioner's wages of $8,941, $879 of income from petitioner's janitorial services business, $2,796 from Mr. Scott's bookkeeping business, and an $8 loss from Karnival Klassics. The 1991 return showed total tax of $3,917, withheld

taxes of $1,654, and a balance due of $2,263.  Mr. Scott made computational errors on the 1991 return which resulted in an $80 overstatement of tax.  Respondent assessed $2,183.50, which is the correct amount of tax the Scotts owed for 1991.

Mr. Scott did not file the 1992 return he had petitioner sign in April 1993.  On the 1992 return Mr. Scott filed late, he reported wages of $37,969,[5] income of $2,337 from his bookkeeping business, and a $32 loss from Karnival Klassics.  Mr. Scott reported total tax of $3,720, income tax withheld of $1,477, and a balance due of $2,243.  The return was signed only by Mr. Scott, although it was filed as a joint return.  Petitioner did not sign the return, even though respondent accepted it as a joint return and assessed the tax reported, which was not paid.

On the 1993 return, the Scotts reported Mr. Scott's wages of $27,458, income of $5,440 from his bookkeeping business, total tax of $2,945, income tax withheld of $1,401, and a balance due of $1,544.  He did not send a payment for the balance due with the return.  He made a computational error on the return which resulted in a $9.51 understatement of tax.

Mr. Scott timely filed the 1994 return on or about April 16, 1995.  On the 1994 return, the Scotts reported petitioner's wages

---

[5]Respondent's records show that Mr. Scott received wages of $28,205 from West Kesler Co. and $4,620 from CO & CO Enterprises, Ltd.  It appears that the $5,144 balance ($37,969 - $32,825) was petitioner's wages.

of $15,643, Mr. Scott's wages of $27,909, income from his bookkeeping business of $5,750, total tax of $5,353, income tax withheld of $2,803 ($1,072.51 was withheld from petitioner's wages), and a balance due of $2,550. Mr. Scott did not send a payment for the balance due with the return.

The Scotts lived in California from 1990 through 1994. Petitioner moved to Idaho in late 1994 or early 1995. Mr. Scott remained in California. He filed for bankruptcy in 1995, after petitioner moved to Idaho. During the bankruptcy proceedings, petitioner learned that she and Mr. Scott owed income taxes for past years. Mr. Scott told petitioner that they could take care of the taxes in the bankruptcy proceedings.

The Scotts owed income taxes to the State of California. Petitioner contacted the State and obtained information about setting up payments in an attempt to resolve those taxes. Mr. Scott became angry when petitioner told him she had contacted the State. He told her it was not her responsibility and that she had no business getting involved in the matter. The State eventually allowed the Scotts to make monthly payments of $50. Petitioner suggested to Mr. Scott that they try to make a similar arrangement with the IRS to pay their Federal taxes. He told petitioner to stay out of it because it was his responsibility and he would handle it.

Mr. Scott timely filed the Scotts' 1995 return on or before April 15, 1996. On the 1995 return, the Scotts reported petitioner's wages of $9,719, Mr. Scott's wages of $10,015, income from his bookkeeping business of $1,460, and his unemployment compensation of $4,536. Mr. Scott, however, failed to include the unemployment compensation when computing the total income. Consequently, the 1995 return reported total income of $21,194, total tax of $512, income tax withheld of $412, and a balance due of $100. Mr. Scott did not send a payment for the balance due with the return. Respondent computed the correct tax to be $780 and assessed the $100 tax shown on the return plus an additional $680. The total amount due has not been paid.

Petitioner and Mr. Scott were divorced in January 2001. A few months before the divorce, Mr. Scott confessed to petitioner that he had been paying prostitutes during the last 14 years of their marriage. At the time of the divorce, the Scotts' youngest child was still a minor and resided with petitioner. The Scotts did not own any real property, stocks, or bonds. Pursuant to the divorce decree, petitioner received most of the furniture and the car, and she was obligated to pay approximately $8,531 of credit card debts. Mr. Scott received some furniture and was obligated to pay listed debts totaling $4,159.40, which included $1,200 of taxes for tax year 2000. Mr. Scott was also obligated to pay

"any other marital debt not specifically included" in the divorce decree. He was to pay monthly child support of $135; he was not required to pay petitioner any spousal support.

Mr. Scott remarried after he was divorced from petitioner. Petitioner married Mr. Smith in 2002. Shortly after they were married, Mr. Smith's employer went out of business, and Mr. Smith began collecting unemployment compensation. Petitioner has been employed as a receptionist for a publishing company. She is paid $9.60 per hour for 32 hours a week.

On August 9, 2002, petitioner filed a Form 8857, Request for Innocent Spouse Relief, seeking relief under section 6015(b), (c), and (f) from liability for taxes owed for 1990 through 1995. In accordance with the instructions to Form 8857, petitioner attached a statement explaining why she believed she was entitled to section 6015 relief. She stated:

> As of January 8, 2001, I was divorced from David R. Scott. He worked for a CPA Accounting firm in Oakland, California, and he took care of all of the financial matters in our family. I had complete trust in him [sic] doing the books and taking care of these matters. During this twenty-five year marriage I never questioned the totals or figures of our Income Taxes or references to the taxes. In tax matters, my knowledge was, and is very limited and so when he said he would, "take care of it", I had no reason to believe otherwise.
>
> During part of this marriage we conducted a home based business. At the opening of the business he agreed that his part would be to keep record of the accounting details, while I was busy with all other aspects of running this business. During this period of time, with the business in our home, he indicated to

me that we were taking a loss from the business. Seldom did I take a draw from the business because finances were so tight.  We basically operated on a cash basis with very little inventory and credit was limited.  When he figured the taxes each year I did not question him, and signed the tax forms without question.

When the IRS audited us and problems were found I was greatly surprised and totally unaware of any inconsistencies both with our personal taxes and the businesses.  His explanation, at the time, was that he knew that we didn't have the cash flow and knew we couldn't afford the taxes.  I also have reason to believe that there were other things that I was not aware of.  It wasn't too long after this that we went bankrupt.

In 1994 the children and I moved to Arimo, Idaho. The bankruptcy was filed in California while I was in Idaho.

One of respondent's managers sent petitioner a letter acknowledging receipt of her request for section 6015 relief and asking her to complete and return a questionnaire enclosed with the letter.  Petitioner completed the questionnaire and returned it to respondent in or about September 2002.  The additional information petitioner included on the questionnaire included, inter alia, her education, Mr. Scott's education, and a monthly income and expense sheet showing a two-member household with wage income of $1,198, unemployment compensation of $1,280, and expenses totaling $2,007.  A tax examiner with respondent's Cincinnati Centralized Innocent Spouse Operations (CCISO) considered petitioner's request for section 6015 relief.

On May 23, 2003, CCISO issued petitioner a preliminary determination denying her section 6015 relief for all years. The letter explained that CCISO had denied petitioner relief under section 6015(b) and (c) for the 1993 and 1995 understatements of tax because she had constructive and actual knowledge of the computational errors, the errors were on the returns, and petitioner, having a duty to review the returns, failed to do so. The letter explained that CCISO denied petitioner relief under section 6015(f) for the understatements and/or underpayments of tax for all years because petitioner did not establish that she believed the tax would be paid at the time the returns were filed and, having a duty to inquire as to how the taxes would be paid, failed to do so. Additionally, there were balances owed for previous years when the returns were filed and a bankruptcy had been filed. The letter informed petitioner that she could request that an Appeals Office review the preliminary determination.

Petitioner, Mr. Smith, and Mr. Scott and his new wife met with petitioner's clergyman, a bishop of the Church of Jesus Christ of Latter-Day Saints (the LDS Church). Mr. Scott told the bishop that he had filed erroneous Federal income tax returns and had kept that fact from petitioner and that he put the returns in

front of petitioner and told her where to sign.  At the bishop's suggestion, Mr. Scott agreed to write a letter to the IRS exonerating petitioner.  Mr. Scott never sent the letter.

Petitioner requested a review by an Appeals Office, and her case was transferred from CCISO to respondent's San Jose Office of Appeals.  By letter dated August 22, 2003, the Appeals Office informed petitioner that it had received her case for consideration.

Petitioner and Mr. Smith (collectively the Smiths) filed a joint income tax return for 2002 that reported an overpayment of tax.  Initially, respondent determined that the return contained an error, and that the Smiths underpaid their 2002 tax.  The issue was ultimately resolved and, on June 16, 2003, respondent sent them a refund of $717.74.

Mr. Smith has not been able to find permanent employment and his unemployment compensation terminated in 2003.  He reported unemployment compensation of $3,888 in 2003.  Petitioner provides the sole support for the household.  The Smiths often do not have enough money to pay their mortgage, buy food, or pay their utilities.  The LDS Church has paid $10,433 for the Smiths' mortgage and propane gas bills since February 2003.  The LDS Church has also provided them with food.

Petitioner needs a knee replacement but cannot afford the cost that exceeds the amount that would be paid by her health insurance. Moreover, if she had the surgery, she would need to take a month off from work without pay and would not be able to pay living expenses for that month.

The Appeals officer assigned to petitioner's case determined that (1) petitioner was divorced from Mr. Scott, (2) petitioner would not suffer economic hardship if relief from liability was not granted, (3) petitioner did not allege abuse, (4) petitioner had reason to know that there was not enough cashflow to pay the taxes, and Mr. Scott had informed her that they could not afford to pay taxes and had filed for bankruptcy, (5) the Scotts' divorce decree did not address the payment of taxes for any year except 2000, (6) one-half of the liability on each return was attributable to petitioner and one-half was attributable to Mr. Scott, (7) petitioner did not receive significant benefit other than normal support, (8) petitioner and Mr. Smith had unpaid taxes for 2002, and (9) petitioner did not allege any health problems. The Appeals officer concluded that, despite the lack of economic hardship, it would be inequitable to hold petitioner liable for the portion of tax liability attributable to Mr. Scott. Therefore, on September 1, 2004, the Appeals Office sent petitioner a notice of determination granting her partial equitable relief under section 6015(f), as follows:

| Tax Year | Liability | Relief Allowed | Liability Remaining |
| --- | --- | --- | --- |
| 1990 | $4,562.00 | $2,281.00 | $2,281.00 |
| 1991 | 4,874.00 | 2,437.00 | 2,437.00 |
| 1992 | 4,785.44 | 2,392.72 | 2,392.72 |
| 1993 | 3,692.44 | 1,846.22 | 1,846.22 |
| 1994 | 5,990.50 | 2,995.25 | 2,995.25 |
| 1995 | 1,387.00 | 693.50 | 693.50 |

The explanation of adjustments stated that respondent was granting relief for the unpaid liability attributable to Mr. Scott under the community property laws of California and Idaho but could not grant full relief because of the "knowledge factor"--petitioner had knowledge or reason to know that the taxes would not be paid.

## Discussion

As a general rule, spouses filing a joint Federal income tax return are jointly and severally liable for all taxes shown on the return or found to be owing. Sec. 6013(d)(3). Section 6015, however, provides taxpayers relief from joint and several liability under certain circumstances. Section 6015 encompasses three types of relief: (1) Section 6015(b)(1) provides full or apportioned relief from joint and several liability; (2) section 6015(c) provides proportionate tax relief to divorced or separated taxpayers; and (3) section 6015(f) provides equitable relief from joint and several liability in certain circumstances if neither section 6015(b) nor (c) is available.

If the Commissioner denies a taxpayer's request for relief under section 6015, section 6015(e)(1) permits the taxpayer to petition the Tax Court, and grants the Tax Court jurisdiction, to determine the appropriate relief available to the individual under section 6015.  In exercising jurisdiction under section 6015(e)(1)(A) to determine the relief to which a taxpayer is entitled under section 6015(f), it is appropriate for this Court to consider the evidence admitted at trial.  Ewing v. Commissioner, 122 T.C. 32, 44 (2004), vacated on other grounds 439 F.3d 1009 (9th Cir. 2006).

Citing Robinette v. Commissioner, 439 F.3d 455 (8th Cir. 2006), revg. 123 T.C. 85 (2004), respondent asserts that this Court must decide the appropriate relief available to petitioner under section 6015(f) solely on the basis of the administrative record.  We disagree.

Robinette involved the Court's jurisdiction under section 6330 to review the Commissioner's determination to proceed with collection of taxes.  Section 6330(d)(1) permits a taxpayer to appeal the Appeals officer's determination to proceed with collection of taxes.  In Robinette, the U.S. Court of Appeals for the Eighth Circuit held that section 6330(d)(1) provides for limited judicial review of administrative decisions and that the Court is limited to the administrative record.  Id. at 458-461.

Our jurisdiction under section 6015(e)(1) is not limited to an appeal or review of the administrative determination.  Rather, section 6015(e)(1) gives the Tax Court jurisdiction <u>to determine the appropriate relief available to a taxpayer under section 6015</u>, including equitable relief under section 6015(f).  We think there is no convincing reason to exercise our jurisdiction under section 6015(e)(1) to determine the appropriate relief available to a taxpayer under section 6015 differently from our jurisdiction under section 6213(a) to redetermine a deficiency in tax.  <u>Ewing v. Commissioner</u>, <u>supra</u> at 37.  Nor is there any convincing reason to exercise our jurisdiction under section 6015(e)(1) differently in determining the appropriate relief available to a taxpayer under section 6015(f) from determining the relief available under section 6015(b) and (c).

Moreover, the lien and levy procedures under sections 6320 and 6330 are more extensive than the procedures for seeking relief from liability under section 6015.  Taxpayers in a lien or levy action are entitled to participate in a hearing at the Appeals Office nearest their residence.  <u>Katz v. Commissioner</u>, 115 T.C. 329, 337-338 (2000); sec. 301.6330-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs.  The hearing, whether conducted face to face or by telephone or correspondence, affords the taxpayer and the Appeals officer the opportunity to discuss the issues and to fully develop and clarify the facts.  The Appeals officer

often requests specific additional information and supporting documentation. If the financial information in the administrative file is more than 12 months old and/or the information is no longer accurate, the Appeals officer will request a new or updated financial statement before making the determination. See, e.g., Etkin v. Commissioner, T.C. Memo. 2005-245. Additionally, taxpayers' entitlement to audio record section 6330 hearings, Keene v. Commissioner, 121 T.C. 8, 19 (2003), provides them a means of preserving an accurate record of the hearing. None of those safeguards is present under the Commissioner's procedures for processing a taxpayer's request for section 6015 relief.

In September 2004, the Appeals officer determined that petitioner had not shown that she would suffer economic hardship if relief from the tax liabilities were not granted. However, in September 2002 petitioner had sent CCISO a completed questionnaire reporting unemployment compensation. Although unemployment compensation is temporary and most assuredly would have terminated by September 2004 when the Appeals officer made her determination, the Appeals officer did not request an updated financial statement from petitioner. Indeed, the Smiths' joint return for 2003 reported only $3,888 of unemployment compensation, which indicates that the $1,280 of monthly unemployment compensation ended in early 2003.

Furthermore, in justifying the Appeals officer's allocation of the liabilities equally between petitioner and Mr. Scott, respondent contends that without more information from petitioner the Appeals officer could not tell whose income was reported on the returns. Yet the Appeals officer never requested any additional information from petitioner and, in contravention of section 6015(a), applied the community property laws of California and Idaho. See Mora v. Commissioner, 117 T.C. 279, 290 n.8 (2001). Respondent's own argument demonstrates the inadequacy of the procedures employed in this case. We conclude that Robinette is inapplicable to this case.

Our determination with respect to the appropriate relief available to petitioner under section 6015(f) is made in a trial de novo, in accordance with Ewing v. Commissioner, supra, and we may consider matters raised at trial which were not included in the administrative record.

Petitioner bears the burden of proving that respondent's denial of full relief was an abuse of discretion. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). Petitioner must demonstrate that respondent exercised his discretion arbitrarily, capriciously, or without sound basis in

fact or law.  See <u>Jonson v. Commissioner</u>, <u>supra</u> at 125; <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

Section 6015(f) provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by
>
> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>
> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed procedures to be used in determining whether the requesting spouse qualifies for relief from joint and several liability under section 6015(f).  As applicable to the present case, these procedures are set forth in Rev. Proc. 2000-15, 2000-1 C.B. 447.[6]  The requesting spouse must satisfy seven conditions (threshold conditions) before the Commissioner will consider a

---

[6]Rev. Proc. 2003-61, 2003-2 C.B. 296, which supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, is effective for requests for relief under sec. 6015(f) filed on or after Nov. 1, 2003, and for requests for such relief pending on, and for which no preliminary determination letter had been issued as of, that date.  Rev. Proc. 2003-61, sec. 7, 2003-2 C.B. at 299.  Rev. Proc. 2003-61, <u>supra</u>, is not applicable in this case because (1) petitioner filed her request for relief on Aug. 9, 2002, and (2) respondent issued a preliminary determination on May 23, 2003.

request for relief under section 6015(f). Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448.

The threshold conditions are as follows: (1) The requesting spouse filed a joint return for the taxable year for which he or she seeks relief; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the requesting spouse applies for relief no later than 2 years after the date of the Commissioner's first collection activity after July 22, 1998, with respect to the requesting spouse; (4) the liability remains unpaid; (5) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (6) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; and (7) the requesting spouse did not file or fail to file the return with fraudulent intent. Respondent agrees that in this case those threshold conditions are satisfied.

In cases where the threshold conditions have been satisfied, equitable relief may be granted under section 6015(f) if, taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable. Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449. Rev. Proc. 2000-15, sec. 4.03, lists several nonexclusive factors that the Commissioner will consider in determining eligibility for equitable relief under section 6015(f).

The list of nonexclusive factors that the Commissioner will consider as weighing in favor of granting relief includes: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse would suffer economic hardship if relief were denied; (3) the requesting spouse was abused by the nonrequesting spouse; (4) the requesting spouse did not know or have reason to know of the items giving rise to a deficiency or that the reported liability would be unpaid; (5) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability;[7] and (6) the unpaid liability is attributable solely to the nonrequesting spouse. Id. sec. 4.03(1).

The list of nonexclusive factors that the Commissioner will consider as weighing against granting relief includes: (1) The unpaid liability is attributable to the requesting spouse; (2) at the time the return was signed the requesting spouse knew or had reason to know of the items giving rise to a deficiency or that the reported liability would be unpaid; (3) the requesting spouse significantly benefited (beyond normal support) from the unpaid liability; (4) the requesting spouse will not suffer economic

_____

[7]According to the revenue procedure, however, "This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at the time the divorce decree or agreement was entered into, that the nonrequesting spouse would not pay the liability." Rev. Proc. 2000-15, sec. 4.03(1)(e), 2000-1 C.B. at 449.

hardship if relief is denied; (5) the requesting spouse has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates; and (6) the requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability.  Id. sec. 4.03(2).

"No single factor will be determinative of whether equitable relief will or will not be granted in any particular case. Rather, all factors will be considered and weighed appropriately."  Id. sec. 4.03.  Furthermore, the list of factors is not intended to be exhaustive.  The Commissioner generally does not consider the fact that the taxpayer did not significantly benefit from the underpayment of tax in determining whether to grant relief under section 6015(f).  However, on the basis of cases deciding whether it was inequitable to relieve a taxpayer from joint liability under former section 6013(e)(1)(D), this Court considers the fact that a taxpayer did not significantly benefit from the unpaid liability as favoring equitable relief under section 6015(f) for that taxpayer.  Van Arsdalen v. Commissioner, T.C. Memo. 2007-48.  In deciding whether respondent's determination that petitioner is not entitled to relief under section 6015(f) was an abuse of discretion, we consider evidence relating to all the facts and circumstances.

1.  Marital Status

If the requesting spouse is separated or divorced from the nonrequesting spouse, this factor would favor granting relief to the requesting spouse.  Rev. Proc. 2000-15, sec. 4.03(1)(a).  Petitioner and Mr. Scott were divorced in January 2001.  Petitioner filed her request for section 6015 relief on August 9, 2002.  Consequently, this factor weighs in favor of granting relief to petitioner.

2.  Economic Hardship

If payment of the tax liability would cause the requesting spouse to suffer economic hardship, this factor would support the granting of equitable relief to the requesting spouse.  Id. sec. 4.03(1)(b).  Economic hardship occurs if payment of the liability, in whole or in part, will cause the taxpayer to be unable to pay his or her reasonable basic living expenses.  Id. sec. 4.02(1)(c), 2000-1 C.B. at 448; see sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.  In determining a reasonable amount for basic living expenses, we consider, among other things:  (1) The taxpayer's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food, clothing, housing, medical expenses, transportation, current tax payments, alimony, child support, or other court-ordered payments and expenses necessary to the taxpayer's production of income; (3) the cost of living in

the geographic area where the taxpayer resides; (4) the amount of property which is available to pay the taxpayer's expenses; (5) any extraordinary circumstances; and (6) any other factor that the taxpayer claims bears on economic hardship. See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

Respondent contends that petitioner does not satisfy the economic hardship test because financial statements on the questionnaire showed that the Smiths' total monthly income of $2,478 exceeded their expenses of $2,007 by $471. The Smiths' monthly income included $1,280 of unemployment compensation. After Mr. Smith's unemployment compensation terminated, there was a monthly deficit of $809, and they were unable to pay their mortgage, utilities, and food bills. Beginning in February 2003, the LDS Church paid the Smiths' mortgage and propane gas bills and provided them with food. Petitioner has established that she is unable to pay her basic living expenses.

Petitioner's divorce left her with modest furnishings and vehicles encumbered with debt. Petitioner would suffer <u>severe</u> economic hardship if relief under section 6015(f) were denied.

3. <u>Abuse</u>

Petitioner was not abused by Mr. Scott. Lack of spousal abuse is not a factor listed in Rev. Proc. 2000-15, sec. 4.03(2), that weighs against granting relief. Therefore, this factor is neutral. See <u>Washington v. Commissioner</u>, 120 T.C. 137, 149 (2003).

4.  Knowledge or Reason To Know

The fact that the requesting spouse did not know or have reason to know when she signed the returns that there was an understatement of tax or that the taxes would not be paid favors granting relief.  The fact that the requesting spouse knew or had reason to know when she signed the returns that there was an understatement of tax or that the taxes would not be paid weighs against granting relief.  In resolving whether in signing a tax return a requesting spouse had reason to know of the understatement of tax in the return, we consider whether the requesting spouse was aware of the circumstances of the transaction(s) that gave rise to the error(s) in the return. Jonson v. Commissioner, 118 T.C. at 115; Bokum v. Commissioner, 94 T.C. 126, 145-146 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

In determining the taxpayer's knowledge, we may examine several factors, including:  (1) The requesting spouse's level of education; (2) the requesting spouse's involvement in the family's financial affairs; (3) the nonrequesting spouse's evasiveness and deceit concerning the family's financial affairs; and (4) the presence of expenditures that are lavish or unusual when compared to the requesting spouse's past standard of living. See Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir.

1989), affg. T.C. Memo. 1988-63; <u>Butler v. Commissioner</u>, 114 T.C. 276, 284 (2000); <u>Flynn v. Commissioner</u>, 93 T.C. 355, 365-366 (1989).

Petitioner was not involved in managing her family's finances, making financial decisions for her family, or the reporting of any tax consequences of financial decisions that were claimed in the joint tax returns. Mr. Scott prepared the Scotts' Federal income tax returns for all years they were married. Mr. Scott was an accountant who worked for an accounting firm and who prepared returns for other taxpayers. Petitioner, by contrast, had a high school education and worked part time as a substitute clerk or secretary and a shipper. She never prepared a tax return.

Petitioner never questioned Mr. Scott about the returns and never questioned that he would pay the taxes reported on the returns. It appears that, while money had always been tight, Mr. Scott had paid the taxes shown as owed on the returns for all the 15 years of the Scotts' marriage before the years at issue.

The liability for 1990 arises from a deficiency attributable to the disallowance of deductions related to the Scotts' Karnival Klassics activity. Mr. Scott kept the records for that activity. He presented the joint return to petitioner and told her where to sign. He did not give petitioner the opportunity to examine the 1990 Schedule C, Profit or Loss from Business, for Karnival

Klassics. She did not know and had no reason to know that the reported cost of supplies exceeded the gross receipts and that Mr. Scott had reported advertising expenses that had not been incurred.

On the record before us, we find that a reasonably prudent taxpayer under petitioner's circumstances at the time of signing the 1990 joint tax return would not have been expected to know that the tax liability stated in that return was erroneous.

The relevant knowledge in the case of a reported but unpaid liability is whether, when the return was signed, the taxpayer knew or had reason to know "that the liability would not be paid". Washington v. Commissioner, supra at 150; Rev. Proc. 2000-15, sec. 4.03(1)(d), 2000-1 C.B. at 449. Accordingly, we must consider whether, "taking into account all the facts and circumstances", sec. 6015(f)(1), petitioner knew or had reason to know that Mr. Scott would not pay the taxes shown as due on the returns.

Having observed petitioner's appearance and demeanor at trial, we find her testimony to be honest, forthright, and credible. When she signed the returns for 1991 and 1993 on or about their due dates, she did not know that Mr. Scott would not file the 1991 return until August 26, 1996, and the 1993 return until January 26, 1998, or that he would not pay the taxes with the returns. Petitioner did not sign the 1992 return that was

filed by Mr. Scott. She had no knowledge that tax was shown as owed on the return and did not know or have reason to know that Mr. Scott would not pay the tax. Petitioner did not know that Mr. Scott had stopped paying the taxes with the returns until he filed for bankruptcy in 1995. She did not know that Mr. Scott was frequenting prostitutes.

Petitioner signed the 1994 and 1995 returns after Mr. Scott filed for bankruptcy. During the bankruptcy proceedings, when petitioner first learned that Mr. Scott had failed to pay the taxes, she suggested to him that they try to arrange installment payments to pay their Federal taxes. Mr. Scott told her that the payment of the taxes was his responsibility and he would handle it. When she signed the 1995 and 1996, returns she could not be sure that he would or would not pay the taxes; she did not know or have reason to know that he would not pay the taxes shown as owed on those returns, and she did not know or have reason to know that he would pay those taxes.

Consequently, the knowledge or reason to know factor favors granting relief for 1990, 1991, 1992, and 1993 and is neutral for 1994 and 1995.

5. Nonrequesting Spouse's Legal Obligation

This is a factor in favor of the requesting spouse where the nonrequesting spouse has a legal obligation pursuant to a divorce decree or an agreement to pay the outstanding tax liability and

the requesting spouse did not know or did not have any reason to know that the nonrequesting spouse would not pay the income tax liability. Rev. Proc. 2000-15, sec. 4.03(1)(e), 2000-1 C.B. at 449.

Petitioner and Mr. Scott's divorce decree placed the legal obligation to pay the $1,200 unpaid tax liability for 2000 exclusively on Mr. Scott. Mr. Scott was also obligated to pay "any other marital debt not specifically included" in the divorce decree. Respondent asserts, however, that petitioner knew or had reason to know, at the time that the divorce judgment and decree was entered, that Mr. Scott would not pay the tax liability. We disagree.

Petitioner first learned that Mr. Scott had failed to pay taxes when Mr. Scott filed for bankruptcy in 1995. During the bankruptcy proceedings petitioner suggested to Mr. Scott that they try to arrange installment payments to pay their Federal taxes. Mr. Scott told petitioner to stay out of it because it was his business and he would handle it. There is nothing in the record to suggest that when the divorce decree was signed in 2001, petitioner knew, or should have known, that Mr. Scott would not pay the taxes. Therefore, we conclude that this factor favors petitioner.

6.  Attributable to Nonrequesting Spouse

In recommending that petitioner be granted partial relief from liability, the Appeals officer erroneously computed petitioner's liability under the community property rules. Determinations under section 6015 are to be made without regard to community property.  Sec. 6015(a); Mora v. Commissioner, 117 T.C. at 290 n.8.

Respondent contends that, on the basis of the information before the Appeals officer, the officer properly allocated the liabilities equally between petitioner and Mr. Scott.  Respondent complains that without more information from petitioner respondent could not tell whose income was reported on the returns.  Respondent urges that, given the fact that for all 6 years at issue both petitioner and Mr. Scott had wages and self-employment income, the Appeals officer's determination of a 50-percent allocation was appropriate under the circumstances.  We disagree.

The Forms W-2, Wage and Tax Statement, attached to the returns show that Mr. Scott's income greatly exceeded petitioner's for every year at issue.  Mr. Scott handled the family finances and dominated the family.  He told petitioner the number of exemptions to claim for withholding.  He was an accountant, and petitioner believed that the claimed exemptions

were proper.  On the basis of these facts, we conclude that the underpayments of tax are attributable solely to Mr. Scott.

7.  Significant Benefit

During their marriage, including the years at issue, the Scotts did not live well, and money was tight.  They had modest furnishings and vehicles, and they never owned a home. Petitioner did not benefit beyond normal support from the unpaid liabilities for all of the years at issue.  Therefore, this factor favors granting petitioner relief.  See Van Arsdalen v. Commissioner, T.C. Memo. 2007-48.

8.  Noncompliance With Federal Income Tax Laws

The fact that the requesting spouse has not made a good faith effort to comply with Federal income tax laws in years after the years for which relief is sought is a factor that weighs against granting relief.  Petitioner and Mr. Smith filed a joint Federal income tax return for 2002 that reported an overpayment of tax.  Initially, respondent determined that the return contained an error and that the Smiths underpaid their 2002 tax.  The issue was ultimately resolved, and on June 16, 2003, respondent sent them a refund of $717.74.  Petitioner complied with Federal income tax laws.  This factor is neutral.

## Conclusion

Petitioner has presented a strong case for relief from joint tax liability on the basis of the factors promulgated by the Commissioner in Rev. Proc. 2000-15, sec. 4.03.  Most of those factors favor granting petitioner relief.  Most significantly, petitioner would suffer extreme economic hardship if relief were denied.  After considering all of the facts and circumstances, we find that it would be inequitable to hold petitioner liable for payment of the outstanding tax liabilities for all years at issue.  Accordingly, we hold that respondent abused his discretion in denying petitioner equitable relief from joint and several liability under section 6015(f).

To reflect the foregoing,

Decision will be entered

for petitioner.
